BUCHANAN ELEVATOR COMPANY, a Corporation, v. JENNIE LEES and James Lees.

(163 N. W. 264.)

**Husband and wife — living together — general power of attorney — wife's business done by husband — business ventures — wife takes risk — loan of money — contract for — wife cannot repudiate.**

When a man and wife live together, and he does business in her name under a general power of attorney, she must take the risk of his business ventures. She cannot repudiate a contract for the loan of money because it was used to pay a loss on a grain-option deal.

Opinion filed May 9, 1917.

Note.—Although in general the relation of husband and wife does not give rise to any presumption that the husband is acting in the transaction as agent of his wife, if the wife allows a husband to have charge of her property, and knows that he is contracting with reference thereto in her name, and, with knowledge of the facts, she ratifies such contracts, a general agency to act for her, so as to bind her for similar contracts made by him in her name and as her agent, will be presumed, and she will be estopped to deny the same, as will be seen by an examination of the cases in note in 17 L.R.A.(N.S.) 223, on proof of husband's agency for wife by evidence of similar acts by husband.

Appeal from the District Court of Stutsman County, Honorable J. A. Coffey, Judge.

Affirmed.

Knauf & Knauf, for appellants.

Testimony which is mere conclusion of fact, irresponsive, hearsay, remote, not within the res gestœ, touching collateral issues or secondary, should not be received over objections. Martin v. Shannon, 92 Iowa, 374, 60 N. W. 646; Rosencrance v. Johnson, 191 Pa. 520, 43 Atl. 360; Young v. Doherty, 183 Pa. 179, 38 Atl. 587; Bradley v. Freed, — Tenn. —, 51 S. W. 124.

Conversations between two persons touching the interests of a third person (party to the action), who is not present, are not admissible. Mitcham v. Schuessler, 98 Ala. 635, 13 So. 618; Fox v. Windes, 127 Mo. 502, 48 Am. St. Rep. 648, 30 S. W. 325; Evans v. Evans, 155 Pa. 572, 26 Atl. 755; McGregor v. Wait, 10 Gray, 72, 69 Am. Dec. 305; May v. Little, 25 N. C. (3 Ired. L.), 27, 38 Am. Dec. 707; Hussey v. Elrod, 2 Ala. 339, 36 Am. Dec. 420; Goodrich v. Tracy, 43 Vt. 314, 5 Am. Rep. 283; Butler v. Price, 115 Mass. 578; Martin v. Rutt, 127 Pa. 380, 17 Atl. 993; Benjamin v. Benjamin, 15 Conn. 347, 39 Am. Dec. 384; Games v. Stiles, 14 Pet. 322, 10 L. ed. 476.

The fact that the gambling option grain orders were sent in by plaintiff or plaintiff's stationery, with full knowledge on the part of plaintiff's actual manager and official, proves that plaintiff must have known defendant's financial inability to buy or pay for the large amounts of grain on which he only bought options. Therefore, the question of how much money he had lost on such deals was competent. Lear v. McMillen, 17 Ohio St. 464; Wagner v. Hildebrand, 187 Pa. 136, 41 Atl. 34; Phelps v. Holderness, 56 Ark. 300, 19 S. W. 921; Jamieson v. Wallace, 167 Ill. 388, 59 Am. St. Rep. 302, 47 N. E. 765.

Plaintiff knew that defendant was gambling in options, and all its acts were done in the light of this knowledge. Dows v. Glaspel, 4 N. D. 261, 60 N. W. 60; Melchert v. American U. Teleg. Co. 3 McCrary, 521, 11 Fed. 193.

Such disguises the courts have always sought to pierce, and to ascertain the real intention of the parties. Whitesides v. Hunt, 97 Ind. 191, 49 Am. Rep. 441; Melchert v. American U. Teleg. Co. 3 McCrary, 521, 11 Fed. 193; Edwards v. Hoeffinghoff, 38 Fed. 639; Embrey v. Jemi-

son, 131 U. S. 336, 344, 33 L. ed. 172, 175, 9 Sup. Ct. Rep. 776; Irwin v. Williar, 110 U. S. 499, 28 L. ed. 225, 4 Sup. Ct. Rep. 160; Mohr v. Miesen, 47 Minn. 228, 49 N. W. 862; Jamieson v. Wallace, 167 Ill. 388, 59 Am. St. Rep. 302, 47 N. E. 762; Colderwood v. McCrea, 11 Ill. App. 543; Carroll v. Holmes, 24 Ill. App. 458; Beveridge v. Hewitt, 8 Ill. App. 467; Beadles v. McElrath, 85 Ky. 230, 3 S. W. 152; Flagg v. Baldwin, 38 N. J. Eq. 219, 48 Am. Rep. 308; Kirkpatrick v. Bonsall, 72 Pa. 155; Waite v. Frank, 14 S. D. 626, 86 N. W. 645; Rogers v. Marriott, 59 Neb. 759, 82 N. W. 21; Sprague v. Warren, 26 Neb. 326, 3 L.R.A. 679, 41 N. W. 1115; North v. Phillips, 89 Pa. 250; Cobb v. Prell, 5 McCrary, 85, 15 Fed. 774; Re Green, 7 Biss. 344, Fed. Cas. No. 5,751; Crawford v. Spencer, 92 Mo. 498, 1 Am. St. Rep. 745, 4 S. W. 713; Lowry v. Dillman, 59 Wis. 199, 18 N. W. 4; Watte v. Wickersham, 27 Neb. 457, 43 N. W. 259; Williams v. Tiedemann, 6 Mo. App. 276; Hill v. Johnson, 38 Mo. App. 392.

It was clearly error for the court to permit plaintiff to show that none others had lost money through it by gambling in options. State v. Trott, 36 Mo. App. 29; Ah Kee v. State, — Tex. Crim. Rep. —, 34 S. W. 269; Goldstein v. State, — Tex. Crim. Rep. —, 35 S. W. 289; State v. Hildreth, 31 N. C. (9 Ired. L.) 440, 51 Am. Dec. 372; Com. v. Cooper, 5 Allen, 495, 81 Am. Dec. 762.

Where an agent knowingly participates in an illegal transaction, he cannot recover for his commissions, and the law will leave him without remedy in case of loss. Crawford v. Spencer, 92 Mo. 498, 1 Am. St. Rep. 745, 4 S. W. 713; Irwin v. Williar, 110 U. S. 499, 28 L. ed. 225, 4 Sup. Ct. Rep. 160; Phelps v. Holderness, 56 Ark. 300, 19 S. W. 921; Embrey v. Jemison, 131 U. S. 336, 345, 33 L. ed. 172, 175, 9 Sup. Ct. Rep. 776.

It is sufficient if defendant's purpose was to gamble, and the plaintiff knew this when it went upon the board of trade to make such large purchases and sale for defendant. Phelps v. Holderness, 56 Ark. 300, 19 S. W. 921; McCormick v. Nichols, 19 Ill. App. 337; Beveridge v. Hewitt, 8 Ill. App. 482; Miles v. Andrews, 40 Ill. App. 155; Coffman v. Young, 20 Ill. App. 82; Embrey v. Jemison, 131 U. S. 336, 33 L. ed. 172, 9 Sup. Ct. Rep. 776; Dows v. Glaspel, 4 N. D. 257, 60 N. W. 60; Cassard v. Hinman, 6 Bosw. 8.

The jury had the right to look through and to examine into the books

of account of these transactions, in order to enable them to better determine the intentions of the parties. Dows v. Glaspel, 4 N. D. 261, 60 N. W. 60; Whitesides v. Hunt, 97 Ind. 191, 49 Am. Rep. 441; Melchert v. American U. Teleg. Co. 3 McCrary, 521, 11 Fed. 193; Edwards v. Hoeffinghoff, 38 Fed. 639; Embrey v. Jemison, 131 U. S. 336, 344, 33 L. ed. 172, 175, 9 Sup. Ct. Rep. 776; Irwin v. Williar, 110 U. S. 499, 28 L. ed. 225, 4 Sup. Ct. Rep. 160; Mohr v. Miesen, 47 Minn. 228, 49 N. W. 864; Jamieson v. Wallace, 167 Ill. 388, 59 Am. St. Rep. 302, 47 N. E. 764; Kullman v. Simmens, 104 Cal. 595, 38 Pac. 362; Hill v. Johnson, 38 Mo. App. 383; Crawford v. Spencer, 92 Mo. 500, 1 Am. St. Rep. 745, 4 S. W. 713; Cobb v. Prell, 5 McCrary, 85, 15 Fed. 774; Carroll v. Holmes, 24 Ill. App. 458; Re Green, 7 Biss. 344, Fed. Cas. No. 5,751.

*Thorp & Chase,* for respondent.

"Conclusions of fact are mere inferences drawn from the subordinate or evidentiary facts." 2 Words & Phrases, 1387; Caywood v. Farrell, 175 Ill. 480, 51 N. E. 755.

"An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Comp. Laws 1913, § 6324.

"An agent has such authority as the principal actually or ostensibly confers upon him." Comp. Laws 1913, §§ 6336, 6338; 2 C. J. pp. 435-438, 574, § 32, and cases cited.

In establishing agency, proof of close relationship and dealings may be received with other evidence, and is entitled to consideration. 2 C. J. §§ 33, 36, 37, 70, 71, 213, 215, pp. 440, 441, 461-463, 574, 576; Reid v. Kellogg, 8 S. D. 596, 67 N. W. 687.

"Where an agency can be established by parol, the agent is a competent witness to prove it." 10 Enc. Ev. 14.

"When there is some other evidence of agency, then evidence of the acts and declarations of the alleged agent is admissible, the jury being the judges of its sufficiency." 10 Enc. Ev. pp. 19, 21, 23, 24, §§ 5, 6, cases cited under notes 56, 58; Nowell v. Chipman, 170 Mass. 340, 49 N. E. 631; Christ v. Garretson State Bank, 13 S. D. 23, 82 N. W. 89.

An offer of proof must be specific, and advise the court of what the facts are that the party intends to show. Austin v. Robertson, 25 Minn. 432; Wood v. Washington, 135 Wis. 299, 115 N. W. 810; Smith v.

Gorham, 119 Ind. 436, 21 N. E. 1096; Goyette v. Keenan, 196 Mass. 416, 82 N. E. 427; Smart v. Kansas City, 208 Mo. 162, 14 L.R.A. (N.S.) 565, 105 S. W. 709; Reynolds v. Continental Ins. Co. 36 Mich. 144; Taylor v. Calvert, 138 Ind. 67, 37 N. E. 536; O'Sullivan v. Griffith, 153 Cal. 502, 95 Pac. 873; Grimestad v. Lofgren, 105 Minn. 286, 17 L.R.A.(N.S.) 990, 127 Am. St. Rep. 566, 117 N. W. 515; Knatvold v. Wilkinson, 83 Minn. 265, 86 N. W. 99; Borden v. Lynch, 34 Mont. 503, 87 Pac. 609; Lucy v. Wilkins, 33 Minn. 441, 23 N. W. 861; Wolford v. Farnham, 47 Minn. 95, 49 N. W. 528.

A cross-examination is proper when it pertains to what has already been offered, and seeks to explain or apply the testimony. State v. Kent, 5 N. D. 541, 35 L.R.A. 518, 67 N. W. 1052; Campau v. Dewey, 9 Mich. 381; Ah Doon v. Smith, 34 Or. 89, 34 Pac. 1093; Sayres v. Allen, 25 Or. 211, 35 Pac. 254; 3 Enc. Ev. 832; Abbott Civ. Jury Trials, pp. 220, 221; Hogan v. Klabo, 13 N. D. 319, 100 N. W. 847; 1 Thomp. Trials, 2d ed. § 408.

In order to constitute a grain purchase a gambling transaction, it must appear that both parties well understood that there were to be no deliveries made. Beidler & R. Lumber Co. v. Coe Commission Co. 13 N. D. 639, 102 N. W. 880.

"Preponderance of the evidence means greater weight, or evidence which is more credible than some other evidence, with which it is compared." Button v. Metcalf, 80 Wis. 193, 49 N. W. 809; 3 Words & Phrases, p. 2649.

A mere opinion or conclusion, as contradistinguished from a statement of fact, may not be proved under the rule relating to admissions and declarations. 1 R. C. L. p. 481, § 16; McCord v. Seattle Electric Co. 46 Wash. 145, 13 L.R.A.(N.S.) 349, 89 Pac. 491; Scott v. St. Louis, K. & N. W. R. Co. 112 Iowa, 54, 83 N. W. 818, 8 Am. Neg. Rep. 391; Hammond, W. & E. C. Electric R. Co. v. Spyzchalski, 17 Ind. App. 7, 46 N. E. 47, 1 Am. Neg. Rep. 225; Saunders v. City & Suburban R. Co. 99 Tenn. 130, 41 S. W. 1031; Gulf, C. & S. F. R. Co. v. Montgomery, 85 Tex. 64, 19 S. W. 1015; Plymouth County Bank v. Gilman, 3 S. D. 170, 44 Am. St. Rep. 782, 52 N. W. 869; Ohio & M. R. Co. v. Stein, 133 Ind. 243, 19 L.R.A. 733, 31 N. E. 180, 32 N. E. 831; Printup v. Mitchell, 17 Ga. 558, 63 Am. Dec. 258; Binewicz v. Haglin, 15 L.R.A.(N.S.) 1096, note; 1 Thomp. Trials, §§ 377, 379.

ROBINSON, J. This is an action on a promissory note. The defense is that the note was given on a grain-option deal and that it was made without authority by James Lees, the husband of Jennie Lees. The case was fairly tried. The jury found a verdict against the defendants for $1,843.75, and interest; and they appeal to this court. Both the defendants claim that the consideration of the note was illegal, and Jennie Lees claimed that her husband had no authority to sign her name to the note, because the note was given for gambling purposes. The issues in the case and the law of the case are very simple. The evidence shows plaintiff paid for the note the face value, $1,843.75; that it was signed by James Lees and Jennie Lees. For several years James Lees had been insolvent, and he had been doing quite an extensive business in the name of his wife with her knowledge and consent. Indeed he had a general power of attorney to make deeds and mortgages, to borrow money, and to buy and sell personal property, and to sign her name to notes. It seems the general rule is that when a man becomes insolvent he becomes an agent of his wife, and does business in her name. The note in question is signed thus: Mrs. Jennie Lees, by James Lees, her attorney in fact, and by James Lees. At and prior to the time of the making of the note in question James Lees had been doing considerable farming business, for his wife, of course. He and his sons hauled wheat to the Buchanan Elevator Company, and he habitually took storage tickets, made out checks and promissory notes in the name of J. Lees or Jennie Lees. He wanted to get rich quick, and concluded to do it by speculation in grain options with John Miller Company. He got his old-time friend, J. A. Buchanan, to do most of the correspondence with the company. When his losses amounted to about $1,900, he gave the note in question and borrowed from the plaintiff the money to pay up. Now he wants to shift the losses onto his old friend, J. A. Buchanan, because he was so kind as to do most of the correspondence for him. Now he claims that Buchanan was kind of an accessory and decoyed him into the losing speculation. Man is too much disposed to blame others for his own folly, and attorneys are too much disposed to think it an easy matter to hoodwink judges and to make them believe that there is no confidence between a man and his wife when he acts as her general agent, with her knowledge and consent.

The case was fairly submitted to the jury and it is hard to see how they could have found a different verdict. It is certainly well sustained by the evidence.

Judgment affirmed.

CHRISTIANSON, J. I concur in result.